IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2012

## JERRY D. CARNEY, II v. DWIGHT BARBEE, WARDEN

**Appeal from the Circuit Court for Lauderdale County**
**No. 6506      Joseph H. Walker, III**

**No. W2011-01977-CCA-R3-HC  -  Filed October 31, 2012**

The Petitioner, Jerry D. Carney, II, appeals the summary dismissal of his petition for writ of habeas corpus, in which he contended that his life sentence for his first degree premeditated murder conviction was illegal and void. On appeal, the Petitioner challenges the summary dismissal of the petition. His primary claim is that his life sentence is illegal because the statute governing his release eligibility does not allow for the possibility of parole. Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Jerry D. Carney, II, Henning, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; and Lacy Wilber, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

Following a jury trial, the Petitioner was convicted of first degree premeditated murder for the killing of Craig Cartwright, which occurred on August 13, 1997. The trial court sentenced the Petitioner to life imprisonment. The Petitioner's conviction was upheld on direct appeal. See State v. Jerry D. Carney, No. M1999-01139-CCA-R3-CD, 2000 WL 1335770 (Tenn. Crim. App. Sept. 25, 2000), perm. app. denied, (Tenn. Apr. 24, 2001). A detailed factual account appears in the direct appeal opinion. See id. at *1-2.

The Petitioner subsequently filed multiple collateral attacks on his conviction, including a petition for post-conviction relief, a petition for habeas corpus relief, and two petitions for a writ of error coram nobis. See Jerry D. Carney v. State, No. M2006-01740-CCA-R3-CO, 2007 WL 3038011 (Tenn. Crim. App. Oct. 17, 2007) (second petition for a writ of error coram nobis); Jerry D. Carney v. State, No. M2005-01904-CCA-R3-CO, 2006 WL 2206045 (Tenn. Crim. App. July 31, 2006) (memorandum opinion) (first petition for a writ of error coram nobis); Jerry D. Carney v. State, No. M2002-02416-CCA-R3-PC, 2005 WL 351238 (Tenn. Crim. App. Feb. 14, 2005) (petition for post-conviction relief), perm. app. denied, (June 20, 2005); Jerry D. Carney v. David Mills, Warden, No. W2004-01563-CCA-R3-HC, 2004 WL 2756052 (Tenn. Crim. App. Dec. 2, 2004) (first petition for habeas corpus relief).

On August 19, 2011, the Petitioner filed a second petition for a writ of habeas corpus, alleging that his sentence was illegal because the "statutory sentencing scheme contained in T[ennessee] C[ode] A[nnotated section] 40-35-501(i)(1) & (2) . . . does not provide for the possibility of parole upon a defendant being sentenced to imprisonment for life[.]" He asserted that section 40-35-501(i) "specifically does away with any release eligibility" for a person committing the offense of first degree murder. He further pointed out that subsection (i) is in conflict with subsection (h), which provides that a defendant sentenced to life is release eligible after service of sixty percent of sixty years, and he claimed that any amendment to section (h) was unconstitutional. In the petition, he also noted that he was sentenced by the judge and that "[t]here was not a sentencing hearing had in this matter for the jury to fix the punishment."

The habeas corpus court summarily dismissed the petition, concluding that "[h]abeas corpus is not the proper method to attack statutory provisions." The court further determined as follows: (1) "There is a possibility of parole for a life sentence, if [P]etitioner lives long enough"; and (2) "There was no need for the jury to fix punishment, and the jury only fixes punishment if notice has been filed that the State seeks enhanced punishment for first degree murder." The Petitioner timely appealed.

ANALYSIS

The determination of whether to grant habeas corpus relief is a question of law and our review is de novo. Summers v. State, 212 S.W.3d 251, 262 (Tenn. 2007). The Tennessee Constitution guarantees a convicted criminal defendant the right to seek habeas corpus relief. Tenn. Const. art. I, § 15. However, the grounds upon which habeas corpus relief will be granted are very narrow. Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). In this state, habeas corpus relief only addresses detentions that result from void judgments or expired sentences. Archer v. State, 851 S.W.2d 157, 164 (Tenn. 1993). A judgment is void

"only when '[i]t appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." Hickman v. State, 153 S.W.3d 15, 20 (Tenn. 2004) (quoting State v. Ritchie, 20 S.W.3d 624, 630 (Tenn. 2000) (citations omitted)). On the other hand, a voidable judgment or sentence is one which is facially valid and which requires evidence beyond the face of the judgment or the record of the proceedings to establish its invalidity. Taylor, 995 S.W.2d at 83.

A sentence imposed in direct contravention of a statute is illegal and, thus, void. Stephenson v. Carlton, 28 S .W.3d 910, 911 (Tenn. 2000). A petitioner bears the burden of establishing a void judgment or illegal confinement by a preponderance of the evidence. Hogan v. Mills, 168 S.W.3d 753, 755 (Tenn. 2005). Moreover, it is permissible for a court to summarily dismiss a habeas corpus petition, without the appointment of counsel and without an evidentiary hearing, if there is nothing on the face of the record or judgment to indicate that the convictions or sentences addressed therein are void. Passarella v. State, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

On appeal, the Petitioner first argues that the habeas corpus court "addressed matters and issues that were not raised in the [Petitioner's] writ of habeas corpus[,]" thus, denying him "of a reasonable opportunity to be heard[.]" He alleges that nowhere in the petition did he argue about "there being no sentencing hearing for the jury to fix punishment[.]" Moreover, he contends that the order of summary dismissal "completely overlooked all of the issues that were raised" in the petition, not "even mention[ing] a single issue that was raised[.]"

We disagree with the Petitioner's characterization of the habeas corpus court's order. Although not specifically stated as an issue, the Petitioner stated in the petition that he was sentenced by the judge and that "[t]here was not a sentencing hearing had in this matter for the jury to fix the punishment." Additionally, the Petitioner made broad allegations in his petition. The crux of the Petitioner's argument, that there was no release eligibility for a life imprisonment sentence pursuant to Tennessee Code Annotated section 40-35-501(i), was ruled upon by the court. This issue is without merit.

Next, the Petitioner contends that his sentence is illegal because the trial court was "without jurisdiction and authority to sentence the Petitioner to imprisonment for life because this sentence is an illegal sentence and is in direct contravention of a statute[.]" Noting the conflicting release eligibility provisions of section 40-35-501(h) and (i) for a life sentence, he contends that "there is no possibility of parole or release eligibility for the offen[s]e of 1st degree murder pursuant to T[ennessee] C[ode] A[nnotated section] 40-35-501(i)," which is

unconstitutional. Again, the Petitioner makes broad statements about his grounds for relief; his brief, just like the petition, is often rambling and redundant. The Petitioner discusses the conflicting statutory provisions, but he then cites to rules of statutory construction, concluding that the later-enacted provision, subsection (i), applies. Morever, the Petitioner only cites generally to a violation of his due process rights. We attempt to address the crux of the Petitioner's argument, whether his sentence was imposed in contravention of a statute and whether the sentence is unconstitutional.

In Vaughn v. State, 202 S.W.3d 106 (Tenn. 2006), our supreme court addressed the conflicting release eligibility provisions for a life sentence and clarified as follows. For offenses committed prior to July 1, 1995, the release eligibility for a defendant receiving a life sentence was governed by Tennessee Code Annotated section 40-35-501(h)(1). This section provides:

> Release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236 or any other provision of law relating to sentence credits. A defendant receiving a sentence of imprisonment for life for first degree murder shall be entitled to earn and retain sentence credits, but the credits shall not operate to make the defendant eligible for release prior to the service of twenty-five (25) full calendar years.

Tenn. Code Ann. § 40-35-501(h)(1). For offenses committed after July 1, 1995, subsection (i)(1) was later added, which states:

> (1) There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

Tenn. Code Ann. § 40-35-501(i)(1). The offenses to which subsection (i)(1) applies include first degree murder. Tenn. Code Ann. § 40-35-501(i)(2)(A). The passage of section 40-35-501(i) did not repeal section (h), as section (h) still applies to a person committing an offense

before July 1, 1995. Vaughn, 202 S.W.3d at 118. However, it was not expressly stated that section (h) would no longer apply to a person committing an offense on or after July 1, 1995. See id.

The Vaughn court then addressed the principles of statutory construction and concluded that subsection (i) controlled for offenses after July 1, 1995. The court reasoned as follows:

> As for the conflict in the statutes, well-settled principles of statutory construction make it clear that the most recently enacted statute repeals by implication any irreconcilable provisions of the former act. See, e.g., Tennessee-Carolina Transp., Inc. v. Pentecost, 362 S.W.2d 461, 463 (1962).

> The Attorney General issued an opinion on July 1, 1997, in an attempt to clarify the effect of the amendment on the prior statutory language. The Attorney General based his opinion on "long established rules of statutory construction" and concluded:

>> The only reasonable resulting interpretation would be that subsection (i) operates, in so far as it conflicts with the provisions of the existing statute governing release eligibility, to raise the floor from 60% of sixty years . . . to 100% of sixty years, reduced by not more than 15% of eligible credits.

> Tenn. Op. Att'y Gen., No. 97-098 (1997) (emphasis added).

Vaughn, 202 S.W.3d at 118-19. The Attorney General Opinion referenced in Vaughn further provides as follows:

> Under this analysis, the term of imprisonment for first degree murder is one hundred (100%) percent of the life sentence pursuant to subsection (i) of Tenn. Code Ann. § 40-35-405 for crimes committed on or after July 1, 1995. The possible punishments for first degree murder remain either death, life without the possibility of parole or life imprisonment. The current amendment's effect on the latter possibility would entitle the defendant to release eligibility only after serving sixty years, the equivalent to a life sentence for the purpose of calculating release eligibility, less any eligible credits so long as they do not operate to reduce the sentence more than 15%. Therefore, the mandatory minimum percentage of a life term that must be

served prior to becoming release eligible is 85% of sixty years, or fifty-one years.

Tenn. Op. Att'y Gen. No. 97-098 (1997).

We note that the release eligibility section of the Petitioner's judgment form provides for release eligibility pursuant to the 1989 Act and for "1st degree murder"; there is no specific percentage mentioned. Subsection (i) was in effect at that time the Petitioner committed the present offense. There is nothing on his judgment form, providing for a sentence of life imprisonment with the possibility of parole, that is in direct contravention of the relevant statutes. Hence, the sentence of life imprisonment was not imposed in contravention of statutory law and is therefore not void. The Petitioner is not entitled to habeas corpus relief on this issue.

Under Tennessee law, a defendant has no right to a conditional release prior to the expiration of a valid sentence of confinement. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005) (citations omitted). A protected liberty interest in parole exists only where the statute creates an expectation of parole. Id. (citation omitted). "[A] prisoner acquires no due process right to early parole or to a hearing on early parole." Donald R. McMahan v. Tenn. Dep't of Corr., No. M2005-01625-COA-R3-CV, 2007 WL 2198209, at *3 (Tenn. Ct. App. July 26, 2007) (citing see, e.g., Wright v. Trammel, 810 F.2d 589, 591 (6th Cir. 1987); Frazier v. Hesson, 40 F. Supp.2d 957, 964 (W.D. Tenn. 1999); Kaylor v. Bradley, 912 S.W.2d 728, 735 (Tenn. Ct. App. 1995)), perm. app. denied, (Tenn. Feb. 4, 2008). "The Due Process Clauses of the state and federal constitutions protect only genuine claims involving pre-existing entitlements. They do not protect unilateral expectations or abstract needs or desires." Kaylor, 912 S.W.3d at 735. Unless a prisoner has a vested right in early release, he cannot state a due process claim. Because Tennessee does not recognize a constitutional right to early release, the Petitioner cannot show that he has suffered a deprivation of a liberty interest. The Petitioner is not entitled relief via a writ of habeas corpus.

CONCLUSION

Based upon the foregoing, the order of summary dismissal is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE